IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WILLIAM SEYMOUR JONES,              )
                                    )
        Petitioner,                 )
                                    )
        v.                          )       Civil Action No. 06-1488
                                    )       Judge Gary L. Lancaster/
Superintendent FOLINO; PENNSYL-     )       Magistrate Judge Amy Reynolds Hay
VANIA BOARD OF PROBATION AND        )
PAROLE; and THE ATTORNEY            )
GENERAL OF THE STATE OF             )
PENNSYLVANIA,                       )
                                    )
        Respondents                 )

## REPORT AND RECOMMENDATION

### RECOMMENDATION

It is respectfully recommended that the habeas petition filed pursuant to 28 U.S.C. § 2254

be dismissed and that a certificate of appealability be denied.

### REPORT

William Seymour Jones, a/k/a/ William Seymour ("Petitioner"), has an extensive criminal

history, including the commission of both federal and state crimes while on parole from a

Pennsylvania sentence. His extensive criminal undertakings have caused a confusing record of

commitments. He is currently in federal custody serving a federal sentence for robbery. Adding

to the confusion is Petitioner's less than pellucid explanation of his claims. At base, it appears

that Petitioner is challenging the legality of his being held in Pennsylvania state prisons from

roughly December 2000 until January 31, 2007, when he was transferred into the United States

Marshal's custody in order to begin serving a federal sentence. Petitioner claims that at some

point, apparently after he was convicted by the federal court, he should have been immediately

transferred into federal custody as is required, according to Petitioner, by Pennsylvania state law.

In addition, he challenges the computation of his Pennsylvania state sentence, alleging that the

time he spent in state custody from December 2000 until January 31, 2007 should be credited

against his Pennsylvania State Sentence. Lastly, he challenges the validity of the Pennsylvania

Board Of Probation and Parole's ("Board") detainer presently lodged with the federal

authorities.

Because Petitioner challenges solely the legality of his custody in state prison from

December 2000 to January 2007, and that custody has now ended, at least for the time being,

Petitioner's challenge thereto is moot. As to the claim concerning the recalculation of his

Pennsylvania sentence, the claim is not ripe, because despite his claim that his Pennsylvania

sentence has been recalculated, the Board has not issued an order recalculating his new

maximum and minimum sentence, and so, his challenge thereto is not ripe. As to the challenge

to the Board detainer, Petitioner has not demonstrated that he exhausted his state court remedies

with respect to this claim.

### *Legal Standards*

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, tit. I,

§101 (1996) ("AEDPA"), which amended the standards for reviewing state court judgments in

federal habeas petitions filed under 28 U.S.C. § 2254, was effective April 24, 1996. Because

petitioner's habeas petition was filed after the effective date of AEDPA, AEDPA is applicable to

this case. Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000).

A state prisoner may seek federal habeas corpus relief only if he is in custody in violation of the United States Constitution or federal law. 28 U.S.C. §2254(a). Smith v. Phillips, 455 U.S. 209 (1982); Zettlemoyer v. Fulcomer, 923 F.2d 284 (3d Cir. 1991). Violations of state law or procedural rules alone are not sufficient; a petitioner must allege a deprivation of federal rights before habeas relief may be granted. Engle v. Isaac, 456 U.S. 107 (1982); Wells v. Petsock, 941 F.2d 253 (3d Cir. 1991). A federal court's scope of review is limited as it does not sit to retry state cases *de novo* but examines the proceedings in the state tribunal to determine if there has been a violation of federal constitutional standards. Barefoot v. Estelle, 463 U.S. 880 (1983), *superceded by statute on other grounds as recognized in*, Slack v. McDaniel, 529 U.S. 473 (2000).

Moreover, the Board is presumed to comply with the law. Garner v. Jones, 529 U.S. 244, 256 (2000) ("we presume the Board [of Pardons and Paroles of Georgia] follows its statutory commands and internal policies in fulfilling its obligations."); United States v. Aviles, 623 F.2d 1192, 1198 (7th Cir. 1980) ("the presumption of regularity attends official acts of public officers and the courts presume that their official duties have been discharged properly."). Thus, the Board's actions are presumptively legal. Hence, it is the burden of the Petitioner to show otherwise.

### *Factual and Procedural History*

Petitioner previously filed a habeas petition against the Board. Seymour v. Shannon, No. 05-2255 (MD. Pa., filed 11/1/05). The factual history is taken mostly from Judge Nealon's decision in that case, denying the habeas petition. In addition, some of the history is taken from the Response filed by the Respondents. Dkt. [53].

In November 1981, Petitioner was convicted of robbery, unlawful restraint and conspiracy in the Court of Common Pleas of Dauphin County. He was sentenced to, inter alia, 10 to 20 years. Dkt. [53-2] at 17. The court will refer to this sentence as the "AY-6223" sentence, which is the Department of Corrections ("DOC") number. It is the AY-6223 sentence and custody pursuant thereto that Petitioner is challenging herein. The 1981 conviction was Petitioner's second felony conviction. At the time of the 1981 conviction, Petitioner was serving a 7 to 20 year sentence for armed robbery, which sentence was maxed out in April 1994. After the 1981 conviction, DOC calculated Petitioner's AY-6223 sentence to have a minimum expiration of April 2, 1995 and a maximum expiration date of April 2, 2005. Petitioner was paroled from his AY-6223 sentence on August 25, 1997 and released to ADAPPT House for a residential treatment program, from which he was released on February 25, 1998. While still on parole from his AY-6223 sentence, Petitioner was arrested on July 13, 2000, for New Jersey state charges. Petitioner eventually pled guilty on December 15, 2000 to a New Jersey charge of hindering and was sentenced by the New Jersey State court to time served.

While Petitioner was in New Jersey state custody, the Federal authorities issued detainers against Petitioner on October 16, 2000, for robberies of two jewelry stores which had occurred in the Eastern District of Pennsylvania. Petitioner was arraigned on these federal charges on November 20, 2000.

On December 15, 2000, Petitioner waived extradition from New Jersey to Pennsylvania. When he was returned to Pennsylvania, he was placed in the Berks County Prison. Although not clear from the record, it appears that Petitioner was placed in the Board's custody and so lodged in the Berks County Prison pursuant to the Board's authority. Dkt. [53-2] at 80. ("On December

21, 2000, Pennsylvania Parole Agents, brought Petitioner Seymour back to Pennsylvania [and] place[d] him in Berks County Jail in Pennsylvania.")(underlining removed).

On January 4, 2001, the Board's agents conducted a parole violation/revocation hearing at the Berks County prison. The hearing was given to Petitioner to provide him an opportunity to respond to the charges that he was a technical parole violator for leaving Pennsylvania to go to New Jersey without permission and to respond to the Board's charge that he was a convicted parole violator in light of his New Jersey state conviction. On February 23, 20001, the Board issued a ruling recommitting Petitioner as both a technical and convicted parole violator. He was ordered to serve 6 months of backtime for each violation but the 6 months for each violation were to be served concurrently, "when available," i.e., when Petitioner was legally available to the Board to start the backtime. Dkt. [53-2] at 32.

In the interim, Petitioner was transferred on January 12, 2001 to SCI-Graterford, a DOC institution. During the first seven months of 2001, Petitioner was transferred frequently between SCI-Frackville and SCI-Graterford.

On July 12, 2001, Petitioner was released on an "Authorized Temporary Absence" ("ATA") to a federal detention center in Philadelphia so as to attend his federal trial. On July 24, 2001, Petitioner was found guilty of the federal charges in connection with the jewelry store robberies. On September 26, 2003, Petitioner was sentenced to 521 months of federal incarceration with five years of supervised release thereafter for the federal convictions.

On October 2, 2003, Petitioner was returned to the state authorities and placed in SCI-Graterford. The Board conducted a second parole revocation hearing on January 9, 2004 to determine whether Petitioner's parole on the AY-6223 sentence should be revoked due to

Petitioner's federal conviction. On May 6, 2004, the Board issued its decision, ordering that Petitioner be re-committed "to a state correctional institution as a convicted parole violator when available to serve 72 months concurrently [with the six months of backtime ordered in the Board's February 23, 2001 decision], for a total of 72 months backtime." Dkt. [53-2] at 45 (capitalization changed).

On May 18, 2004, Petitioner filed a request for administrative relief with the Board, arguing that he did not receive proper credit against his AY-6223 sentence for time which he served in custody due solely to the Board's warrant or authority. The Board denied relief and Petitioner appealed to the Commonwealth Court on July 9, 2004.[1] Before the Commonwealth Court, Petitioner alleged that the Board had not properly credited him with time against his AY-6223 sentence for the time he spent in the ADAPPT program nor for time that he was held in custody exclusively due to the Board's authority. The Commonwealth Court quashed the appeal, noting that it was essentially not ripe or premature as the Board had only issued a recommitment order and not a recalculation order. The Court issued its decision on December 29, 2004 and reasoned that

> A recommitment order and a recalculation order are separate appealable orders. The first deals with the amount of backtime that will attach whenever an inmate is returned to state custody, and the second computes the actual reparole dates, which cannot be calculated until the inmate is returned to state custody. A recalculation order cannot be appealed under the context of an appeal from an

---

[1] Seymour v. Pa. Board. Of Probation and Parole, No. 1454 CD 2004 (Commonwealth Court, petition for review filed July 9, 2004), docket available at:

> http://ujsportal.pacourts.us/PublicReporting/PublicReporting.aspx?rt=1&&ct=3&dkt=1454%20C
> D%202004&ST=10/30/2007%203:11:29%20PM

(Site last visited on 10/30/2007).

> recommitment order. The order Seymour presently appeals from is a
> recommitment order, therefore, the recalculation issue raised here is premature.
>
> When an individual is on parole from a state institution and is sentenced to
> a term in federal prison, the federal sentence must be served before the parolee
> can be made available to serve any backtime imposed by the Board. Where a
> parolee is presently in federal prison, he must wait until he is returned to the state
> system to raise the issue of credit for time served while in the state system.
>
> Here the board issued a recommitment order sentencing Seymour to serve
> 72 months of backtime when available. As Seymour is presently in federal prison
> and unavailable to the state system, the Board did not issue a recalculation order,
> reserving any credit issues until Seymour is available to serve the backtime
> imposed.

Dkt. [53-2] at 73 to 74 (citations omitted). Accordingly, the Commonwealth Court quashed the

appeal as being premature. Petitioner appealed to the State Supreme Court, which denied

allocatur on October 5, 2005. It is simply not clear from the record, if Petitioner was in state

prison at the time Petitioner appealed to the Commonwealth Court or at the time of that Court's

decision. If he were, it is possible that the Commonwealth Court meant that because Petitioner

must serve his federal sentence first, before he can commence his backtime, even if Petitioner

were physically in the custody of the state authorities, he was legally unavailable to the Board to

commence his backtime until he was transferred to the federal authorities and completed his

federal sentence.

Thereafter, as noted earlier, on November 1, 2005, Petitioner filed a federal habeas

petition in the Middle District of Pennsylvania, raising four issues:

> 1. The Parole Board denied petitioner his due process rights by
> improperly imposing a backtime sentence of 72 months in excess of petitioner's
> maximum date;
> 2. The Parole Board denied petitioner his due process rights by failing to
> credit petitioner's parole time from 2000 and the six (6) months served at
> ADAPPT House;
> 3. The Parole Board denied petitioner his due process rights by holding
> that he is unavailable to begin serving his backtime; and

        4.  The Parole board denied petitioner his due process rights and equal
        protection of the law by failing to credit him for period of time in state custody
        based on a parole warrant.

Dkt. [53-2] at 8 to 9.

Although not entirely clear, it appears that the Middle District Court held that all of the issues raised were not yet ripe because the Parole Board had not yet issued an order recalculating Petitioner's minimum and maximum and would not do so until after the federal sentence has been served and therefore, neither the Board nor Petitioner could tell how the Board would credit his sentence and so it was impossible to tell if the backtime of 72 months exceeded his maximum time and impossible to assess the significance of the Board's conclusion that Petitioner was unavailable to it for him to begin to serve backtime. Dkt. [53-2] at 13 ("the claims which Seymour presents in his petition are not yet ripe"). In the alternative, the Middle District Court held that the claims are not exhausted because they are not yet ripe, i.e., the Board must first perform its recalculation and issue a sentence recalculation order which then can be subject of an appeal to the State Courts. Id., at 13 ("They must remain unexhausted until they become ripe and can therefore be properly presented for judicial review."). In what appears to be yet a third alternative holding, the Middle District Court concluded that the issues were not exhausted also because in his appeal to the Commonwealth Court, Petitioner failed to address the constitutional issues which Petitioner raised before the Middle District Court in the habeas petition. Dkt. [53-2] at 13 ("Even if the claims were ripe, they remain unexhausted because Seymour's Commonwealth Court brief in support of his Petition for Review fails to address the constitutional issues which Seymour presents in his habeas petition."). Accordingly, the Middle

District denied relief and a certificate of appealability.   Petitioner filed for reconsideration and the Court denied the motion on March 20, 2006.

Finally, on November 8, 2006, Petitioner sent in the current habeas petition to this court and it was eventually docketed.  Dkt. [3].  Petitioner has filed many pleadings, the court herein will recount only those most relevant to disposing of the present Section 2254 petition.  Petitioner also filed a brief in support of habeas petition.  Dkt. [21].  Thereafter Petitioner filed an amended habeas petition, Dkt. [33],[2] and a brief in support of the amended petition.  Dkt. [36].

On February 6, 2007, Petitioner filed a notice of change of address, indicating that he was in Youngstown, Ohio, apparently at a federal facility.  Dkt.  [39].  Attorney Laub who apparently is an attorney employed by the Parole Board and who defended against Petitioner's Section 2254 petition filed in the Middle District, moved for and was granted admission to the bar of this court *pro hac vice*.  Dkt. Nos. [42] and [46].  On March 12, 2007, Petitioner filed yet another change of address, indicating that he was transferred to a federal facility in West Virginia, namely, FCI-Gilmer.

---

[2] It is clear that Petitioner's intent in amending his habeas petition was to supplement his originally filed habeas petition and not supplant the originally filed habeas petition. See King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994)("An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading.").

Respondents filed an answer,[3] with attached exhibits, Dkt. [53], and a brief in support, Dkt. [54]. Petitioner filed a traverse, Dkt. [58], and an affidavit in support of his amended habeas petition, Dkt. [61], as well as a brief in support of his traverse, Dkt. [62]. Respondents filed an answer to the amended habeas petition. Dkt. [66]. Petitioner filed a traverse to that answer, Dkt. [67] ,and another brief in support, Dkt. [69].

In the original habeas petition, the basic issue raised was that the Board violated state law by holding a revocation hearing on Petitioner's AY-6223 sentence and revoking Petitioner's parole detainer and activating his parole backtime sentence prior to him serving his federal sentence and the Board activated the detainer on October 25, 2004, and in doing so, they wrongfully kept him in state custody when, as of July 2001, he should have been in federal custody serving his federal sentence where he could have been earning good conduct time credit against his federal sentence as well as getting better medical treatment. In addition to this claim, Petitioner appeared to raise many complaints about the conditions of his confinement while in state custody, including confiscation of his records, and lack of medical treatment. In the amended petition, Dkt. [33], Petitioner raised the following issues: (1) the Board illegally revoked Petitioner's parole on the AY-6223 sentence on October 25, 2004 when it issued a new parole violator minimum of September 2009 and a maximum of May 3, 2011;( 2) the Board again violated Petitioner's rights when in 2006, it again revoked the parole detainer without a

---

[3] Despite an order from this court directing that the Respondents in their answer address the "merits of the Petition[,]" Dkt. [25] at 2, and despite requesting an extension of time in which to file "an answer/response that adequately complies with" this Court's order, Dkt. [43] at 2, ¶ 5, the Respondents noted in a footnote in their answer that, contrary to this court's order, they were **not** addressing the merits of the petition and that they "reserve the right to address the substantive merits of the claims upon further direction of the Court." Dkt. [53] at 1 n.1. The proper method for seeking relief from an order of this court would have been by motion requesting such relief and **not** by a footnote in the answer simply indicating their non-compliance with the order.

hearing or notification of a right to appeal; (3) Respondents hindered access to the courts by depriving him of his legal property; (4) the Board violated Petitioner's rights by improperly holding him in state custody from 2000 to 2007 when he should have been in federal custody where he could have been earning good time credits; (5) where Petitioner was transferred around by the Respondents so often and his legal property was lost or kept from him, the exhaustion requirement should be waived. By way of relief Petitioner seeks the following: (1) order the Respondents to drop their detainer and remove the new maximum of May 3, 2011, (2) order that his original max date of April 5, 2005 be re-instituted and declare the AY-6223 sentence satisfied (3) declare that the Respondents violated clearly established law by revoking his parole and activating his AY-6223 sentence (4) order Petitioner turned over to federal custody. Dkt. [33] at 9.

### *Discussion*

There are two preliminary questions to be addressed. First, to the extent that Petitioner raises issues herein regarding the conditions of his confinement as violating his rights, such as loss of his legal property and inadequate health care or him being placed in the RHU, such claims are not cognizable in habeas but only via a civil rights action. <u>Leamer v. Fauver</u>, 288 F.3d 532, 542 (3d Cir. 2002)("whenever the challenge ultimately attacks the 'core of habeas'– the validity of the continued conviction or the fact or length of the sentence– a challenge, however denominated and regardless of the relief sought, must be brought by way of a habeas corpus petition. Conversely, when the challenge is to a condition of confinement such that a finding in plaintiff's favor would not alter his sentence or undo his conviction, an action under § 1983 is appropriate"); <u>Spruill v. Rosemeyer</u>, 143 Fed.Appx. 488, 489 (3d Cir. 2002)("There are no

material differences for purposes of this appeal between appellant's claims– that prison officials wrongfully disciplined him by placing him in segregated housing for one month and transferring him to a higher security prison in retaliation for exercising his First Amendment Rights– and the claims in *Leamer*. The appellant challenges the conditions of his confinement, not the fact or duration thereof, and such a challenge could not have been brought by means of a habeas action."); <u>Carson v. Johnson</u>, 112 F.3d 818, 820-21 (5th Cir. 1997)("We have adopted a simple bright line rule for resolving such questions. If a favorable determination . . . would not automatically entitle [the prisoner] to accelerated release, the proper vehicle is a § 1983 suit.") (citations and internal quotations omitted).

The next preliminary matter to be addressed is the Respondents' contention that this court lacks subject matter jurisdiction over this habeas petition because it is second or successive within the meaning of AEDPA. The court is not persuaded because the initial habeas petition that Respondents point to, <u>i.e.</u>, the habeas petition filed in the Middle District, <u>Seymour v. Shannon</u>, No. 05-2255 (MD. Pa., filed 11/1/05), was not decided on the merits and hence, this present petition is not second or successive within the meaning of AEDPA.

In AEDPA, Congress enacted strictures on the filing of second or successive habeas petitions in response to the abuse of the habeas writ by prisoners. <u>See</u> <u>Chambers v. United States</u>, 106 F.3d 472, 475 (2d Cir. 1997)("The purpose of the gatekeeping restrictions was to prevent abuse of the habeas writ."). Congress provided that "[b]efore a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application." 28 U.S.C. § 2244(b)(3)(A).

The allocation of gatekeeping responsibilities to the Court of Appeals provided by Section 2244(b)(3)(A) has essentially divested the District Courts of subject matter jurisdiction over habeas petitions that are second or successive within the meaning of that subsection. See, e.g., Robinson v. Johnson, 313 F.3d 128, 140 (3d Cir. 2002)("From the district court's perspective, it [i.e., Section 2244(b)(3)(A)'s gatekeeping assignment to the Courts of Appeals] is an allocation of subject-matter jurisdiction to the court of appeals.").

Under Section 2244(b)(3)(A), a second petition may not necessarily constitute a "second or successive petition" within the meaning of subsection (3)(A). The Supreme Court construed § 2244(b) in a manner that avoids an overly literal construction of the term "second or successive" petition, recognizing that some types of "second" petitions do not implicate the judicially developed abuse-of-the-writ principles that were the basis for AEDPA's statutory restrictions. See Stewart v. Martinez-Villareal, 523 U.S. 637 (1998).

In Stewart, the Court held that §2244(b)(3)(A) authorization was not required because although petitioner's claim that he could not be executed due to the fact that he was incompetent to be executed, had been raised in his earlier petition, the earlier petition was dismissed without prejudice as premature. "This may have been the second time that respondent had asked the federal courts to provide relief on his Ford claim," the Court explained, "but this does not mean that there were two separate applications, the second of which was necessarily subject to § 2244(b)." d. at 643. This claim was not a "second or successive" petition under AEDPA because Martinez-Villareal "brought his claim in a timely fashion, and it has not been ripe for resolution until now." Id. at 645. The Court expressly stated that a later petition should not be considered successive when the earlier petition was dismissed without prejudice for failure to exhaust state

remedies, and that AEDPA should not be construed so that the dismissal of an earlier petition "for technical procedural reasons would bar the prisoner from ever obtaining federal habeas review." Id. at 645. Essentially, where a first petition was brought and dismissed but not addressed on the merits, a second petition challenging the same conviction or sentence is not subject to the requirement that the petitioner apply to the Court of Appeals for permission to file the second petition.

Just as in Stewart, so also here; because the Middle District Court held that Petitioner's claims were not ripe, and because the Middle District Court did not decide the issues on the merits, this present petition is not second or successive.

Nor does the second alternative holding by the Middle District, i.e., Petitioner failed to exhaust his state court remedies, render the present petition second or successive. Slack v. McDaniel, 529 U.S. 473, 487 (2000)(concluding that a second § 2254 application was not "second or successive" after the petitioner's first application, which had challenged the same state-court judgment, had been dismissed for failure to exhaust state remedies); Christy v. Horn, 115 F.3d 201, 208 (3d Cir. 1997)(dismissal of a first habeas petition for failure to exhaust does not render the filing of a second petition violative of AEDPA's bar on second or successive petitions).[4]

_____

[4] There is some ambiguity as to the Middle District's third alternative holding, i.e., that Petitioner failed to exhaust because he had failed to include in his July 9, 2004 appeal to the Commonwealth Court those issues which he was raising in the first habeas petition in the Middle District. The Middle District Court spoke only in terms of failure to exhaust. It is possible to interpret the Middle District's third ground as being a decision that Petitioner procedurally defaulted his claims. However, the Middle District never spoke in terms of procedural default but only in terms of exhaustion. It may be that the Middle District was not certain how the state courts would rule on Petitioner's claims and the Middle District Court was not certain whether the state courts would entertain the claims because state law was not clear as to whether those claims could be entertained. See, e.g., Doctor v. Walters, 96 F.3d 675, 681 (3d Cir. 1996)("If the federal court is uncertain how a state court would resolve a procedural default issue, it should dismiss the petition for failure to exhaust state remedies even if it is

Accordingly, this court does not lack subject matter jurisdiction and so will now consider the claims Petitioner raises but only those claims which are cognizable in habeas.

Although Petitioner raised several issues, in fact, they are really just different ways of attacking the same set of facts, i.e., the alleged wrongfulness of the Board in making Petitioner allegedly serve his backtime before he served his new federal sentence.  Petitioner's cognizable claims boil down to just three issues: (1) the Board wrongfully activated his AY-6223 sentence and made him start to serve that sentence before he started serving his federal sentence which is a violation of state law[5] and which violation of state law also constituted a violation of the equal protection and due process clauses of the United States Constitution, and consequently, he seeks to have this court order that he be discharged from the Board's custody so that he may commence

unlikely that the state court would consider the merits to ensure that, in the interests of comity and federalism, state courts are given every opportunity to address claims arising from state proceedings."). Because the Middle District Court spoke only in terms of exhaustion and did not mention procedural default, this court finds that the Middle District dismissed the petition for failure to exhaust and not for procedural default.   This is significant because if, contrary to this court's finding, the Middle District Court had decided Petitioner procedurally defaulted his claims, then such a holding could render the present petition second or successive, at least in part.  Carter v. United States, 150 F.3d 202, 205-06 (2d Cir. 1998) (since denial of first petition on grounds of procedural default "constitutes a disposition on the merits," that disposition "thus renders a subsequent [habeas or §2255 petition] 'second or successive' for purposes of the AEDPA").  Accord Harvey v. Horan, 278 F.3d 370, 379-80 (4th Cir. 2002); In re Cook, 215 F.3d 606, 607-08 (6th Cir. 2000); United States v. Hawkins, No. Crim. A. 93-221-01, 1998 WL 804729 (E.D. Pa. Nov. 19, 1998).  Even if the Middle District had decided that Petitioner procedurally defaulted the claims raised therein, that Court could not have decided that Petitioner procedurally defaulted Petitioner's third claim raised herein, namely, the challenge to the Board's detainer lodged with the federal authorities because the Board could not have lodged such detainer until after January 31, 2007, i.e., the date  whereon Petitioner began serving his federal sentence, and where the Middle District Court's decision disposing of the first habeas petition, was rendered in February 2006 and a motion to reopen the case was denied in April 2006, long before the Board lodged its detainer.

[5]  61 P.S. § 331.21a(a).  See also  Alston v. Pennsylvania Bd. of Probation and Parole, 799 A.2d 875, 878 (Pa.Cmwlth. 2002)("Pugh, like Alston, was on parole from a state institution when he was convicted on federal charges and sentenced to a federal prison. We held in Pugh that 'where the new sentence is in a federal penal institution, the latter [federal] must be served first.'").

his federal sentence; (2) the time he served in state custody from roughly December 15, 2000 (the approximate date he was returned from New Jersey and housed in the Berks County Prison in Pennsylvania, and placed, according to Petitioner, in the Board's custody) to January 31, 2007, (the date whereon the United States Marshal took Petitioner into federal custody), should all be credited against his AY-6223 sentence, since he was, in fact, serving backtime on that sentence during that time, and (3) if so credited, he has completed his AY-6223 sentence and therefore, the Board's detainer (which is lodged with the federal authorities and which has adverse consequences on Petitioner's federal sentence) is invalid and should be stricken.

As to the first issue, Petitioner essentially sought to have this court declare that his then incarceration pursuant to the Board's custody from roughly December 15, 2000 to January 21, 2007 was unconstitutional because it violated a state law directing that Petitioner serve his new federal sentence before serving backtime on his AY-6223 sentence and this violation of state law violated the equal protection and due process clauses of the United States Constitution. Accordingly, Petitioner sought an order from this Court directing his release to the federal sentence. There are several problems with this claim but the court need mention only one to dispose of this particular claim.

Because during the pendency of this case Petitioner was transferred to federal custody to begin serving his federal sentence, and because Petitioner is challenging only the validity of his being in the Board's custody and not his state conviction, Petitioner's claim that his remaining in the Board's custody after the federal conviction (and possibly after the federal warrant) violated his rights and he should be released is moot. The rule is that where a party has obtained all the relief sought by the time a court comes to rule on a request for relief, the case becomes moot and

should be dismissed.  <u>Lowe v. Duckworth</u>, 663 F.2d 42, 43 (7th Cir. 1981)("When all the relief sought has been obtained, there no longer exists a live controversy, and the case must be dismissed as moot.").   <u>Accord</u>  <u>Lowary v. Lexington Local Bd. of Educ.</u>, 854 F.2d 131, 133 (6th Cir. 1988)("If a party has already obtained all the relief sought on appeal, the case is moot and must be dismissed.") (<u>citing</u> <u>DeFunis v. Odegaard</u>, 416 U.S. 312, 316-17 (1974)); <u>Althridge v. Quiggs</u>, 852 F.2d 621, 624 (D.C. Cir. 1988)("It seems clear that Athridge has obtained all the relief he is entitled to demand, and accordingly that his case is now moot.").  <u>See also</u>  <u>Lane v. Williams</u>, 455 U.S. 624, 631 (1982) ("Since respondents elected only to attack their sentences, and since those sentences expired during the course of these proceedings, this case is moot.").  Petitioner has been released from being in the physical custody of the Board, and has begun serving his federal sentence, the very thing, he sought from this court via the habeas petition.  Even if the Petitioner had still been in the custody of the Board at the time of writing this report, the only thing the Court could have ordered with respect to that custody is that Petitioner be transferred to federal custody.   As powerful as federal courts are, they cannot undo past deeds, they cannot change the past.  They cannot go back now and make Petitioner be in the Federal authority's physical custody.  Hence, this claim by Petitioner is moot.

Now, it may well be that rather than actually change the past, the court can order the Respondents to re-characterize the past, insofar as Petitioner seeks to have the time spent in the state prisons from December 2000 to January 2007,  credited against his AY-6223 sentence.  This brings us to Petitioner's second issue, namely, that the time he served in Pennsylvania state prisons from roughly December 15, 2000 (the approximate date he was returned from New Jersey and housed in the Berks County Prison in Pennsylvania, and placed, according to

Petitioner, in the Board's custody) to January 31, 2007, (the date whereon the United States Marshal took Petitioner into federal custody), should all be credited against his AY-6223 sentence, since he was, according to Petitioner, serving backtime on that sentence during that time.  In contrast with the first argument which is moot, the trouble with this second argument is the same trouble as the Middle District Court noted, i.e., it is not ripe.  This second issue is not ripe yet insofar as the Board has not yet formally issued an order recalculating Petitioner's AY-6223 sentence.  No formal Board decision has been rendered yet as to the issue of how to credit Petitioner's AY-6223 and whether any or all of the time he spent in custody from December 2000 to January 2007 will be credited against the AY-6223 sentence.  Accordingly, this Court relies on both the Middle District Court's rationale[6] and the Commonwealth Court's rationale[7] insofar as this issue is concerned, i.e., the issue is not ripe until and unless the Board issues a formal order recalculating Petitioner's AY-6223 sentence.

Petitioner contends that he has evidence that the Board has actually recalculated his AY-6223 sentence in the form of documents indicating that the Board and DOC show new maximum dates for his AY-6223 sentence of May 3, 2011.  Dkt. [61] at 6 (DOC generated document).  See also Seymour v. Shannon, No. 05-2255 (M.D. Pa. Dkt. 30 filed 11/20/06)(Board generated document indicating "PAROLE VIOLATION MAX DATE: 05/03/2011").  It is apparent however, that the date of May 3, 2011 was arrived at merely by taking the seven years, seven months and seven days that the Board had earlier calculated as the remaining backtime owed on Petitioner's AY-6223 sentence and adding that amount of time to the date of September 26,

---

[6]  The Middle District Court's opinion addressing ripeness is found in Dkt. [53-2], at 9 to 12.

[7]  The Commonwealth Court's opinion addressing ripeness, discussed in terms of the petition being "premature" is found in Dkt. [53-2], at 71 to 74.

2003, the date which, at least the DOC deemed to be the date custody of Petitioner was returned

to the Board.  Dkt. [61] at 7 ("Custody for Return - PV 9/26/2003").  This was apparently done

without crediting Petitioner any of time Petitioner spent in state prisons prior to September 26,

2003.  However to reiterate, the Board has never formally issued an order setting forth

Petitioner's re-calculated sentence for his AY-6223 sentence and it is not clear that the Board

will ever need to do so because Petitioner will be serving his federal sentence until roughly

October 26, 2036, nearly 29 years from now.[8]  In any event, again, the Board will issue a formal

recalculation order when the Board is required to do so, namely, at the end of Petitioner's federal

sentence.  Until the Board does issue a formal order which recalculates Petitioner's sentence and,

as a consequence, does formally decide the crediting issue, i.e., what if any portion of Petitioner's

time spent in the state prisons will be credited to his AY-6223 sentence, any informal interim

ministerial recalculations of Petitioner's maximum date on his AY-6223 sentence by either the

DOC or even by the Board, simply does not raise a ripe claim in a habeas proceeding.

Accordingly, this issue does not merit Petitioner relief.

We turn now to Petitioner's third and final claim.  Petitioner's final claim is that if the

AY-6223 sentence is properly credited with all the time served in the state prisons, then his AY-

6223 sentence is completely satisfied and so, the Board has no authority to issue a detainer on the

---

[8]  See BOP Inmate Locator Website for William Jones, Register No. 53578-066, listing Petitioner as 56 year old male and indicating October 26, 2036 as the projected release date.   Moreover, the court knows from general experience with prisoner cases that the projected release date is the earliest the Petitioner could be released because the projected release date listed on the BOP website assumes that the federal inmate will earn all the good conduct time credit available to him, an assumption that is not always borne out.  The website may be accessed at

http://www.bop.gov/iloc2/InmateFinderServlet?Transaction=IDSearch&needingMoreList=false &IDType=IRN&IDNumber=53578-066&x=26&y=21

(Site last visited 10/29/07).

AY-6223 sentence, which detainer is adversely affecting the service of his federal sentence.

Because Petitioner is currently suffering the effects of the detainer, and the court may redress this

issue, unlike Petitioner's first issue, this issue is not moot, nor is this issue unripe because again,

Petitioner is currently suffering from a concrete injury by the existence of the Board's detainer

unlike the second issue where no formal order recalculating Petitioner's sentence has been

issued.[9]  However, there still are several problems with Petitioner's claim.

Chief among the problems is that Petitioner has not established that he exhausted this

particular claim, i.e., that the Board's detainer is wrongful because he has fully served his

sentence.

Despite some confusion in the courts about the precise nature of the exhaustion doctrine,

especially as it relates to the procedural default doctrine,[10] the Supreme Court has explained that

"Section 2254(b) requires habeas applicants to exhaust those remedies 'available in the courts of

the State.' This requirement, however, refers only to remedies still available at the time of the

federal petition." Engle v. Isaac, 456 U.S. at 125 n.28 (1982)(emphasis added); Gray v.

Netherland, 518 U.S. 152, 161-62 (1996) ("Because [the exhaustion] 'requirement ... refers only

to remedies still available at the time of the federal petition,' it is satisfied 'if it is clear that [the

_____

[9]  The court recognizes that the second and third issues are interrelated.  Neither the Board nor
the State Courts will be able to answer the question of whether the detainer is wrongful or not without
determining whether Petitioner has fully served his AY-6223 sentence, (as Petitioner claims), which will
require some calculations as to how Petitioner should be credited with the time spent in the Pennsylvania
state prisons.  Nevertheless, legally, the two issues are distinct and the second issue will remain unripe
until the Board formally issues an order recalculating his sentence which, under state law, apparently
cannot occur until Petitioner completes his federal sentence.  However, the third issue is indeed ripe (due
to the detainer's adverse consequences on Petitioner's federal sentence) even if it necessarily involves an
informal resolution by the Board of Petitioner's second issue, i.e., how his AY-6223 issue should be
credited.

[10]  See, e.g., Lines v. Larkins, 208 F.3d 153, 160 n.9 (3d Cir. 2000);  Bailey v. Nagle, 172 F.3d.
1299 (11th Cir. 1999).

habeas petitioner's] claims are now procedurally barred under [state] law.")  (citations omitted).

Thus, it is clear that in performing an exhaustion analysis, the question to be asked is: at the time of Petitioner's filing or pendency of his federal habeas petition, did the Petitioner have any available state procedure by which the claims raised in that federal habeas petition could be raised in the state courts.  28 U.S.C. § 2254(c).  <u>See</u> <u>also</u> <u>Wilson v. Foti</u>, 832 F.2d 891, 892 (5th Cir. 1987) (Section 2254's "exhaustion requirement is not met 'if he has the right under the law of the state to raise, by any available procedure, the question presented.'  28 U.S.C. S 2254(c).  When determining whether state remedies are available, we look to the time of the filing of the federal habeas petition, <u>see</u>  <u>Engle v. Isaac</u>. . ."); <u>Giroux v. Pennsylvania Bd. of Probation and Parole</u>, No. Civ. A. 95-0027, 1995 WL 649173, at *4 (E.D. Pa. Nov. 1, 1995) ("The [exhaustion] standard can be described as requiring exhaustion of all currently available state court remedies.").  The animating principle of exhaustion is a comity consideration that, generally, federal court intervention would be <u>premature</u> where the state still affords an opportunity to address a federal habeas petitioner's claims.  Thus, the federal habeas doctrine of exhaustion is concerned with the <u>timing</u> of the federal petition, i.e., has the federal habeas petition been filed before the challenger has utilized the state court procedures available to him.  <u>See</u>, <u>e.g.</u>, <u>Fay v. Noia</u>, 372 U.S. 391, 418 (1963) ("comity demands that the state courts, under whose process he is held, and which are, equally with the federal courts, charged with the duty of protecting the accused in the enjoyment of his constitutional rights, should be appealed to in the first instance...."), <u>overruled</u> <u>on</u> <u>other</u> <u>grounds</u>, <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991); <u>Lambert v. Blackwell</u>, 134 F.3d 506, 513 (3d Cir. 1998) ("The exhaustion requirement does not foreclose federal relief, but merely postpones it.");  <u>United States ex. rel. Porter v. Schomig</u>, No. 98 C.

7388, 1999 WL 1046433, at *3 (N.D. Ill. Nov. 10, 1999) ("The exhaustion doctrine focuses on timing, and 'states that individuals in state government custody may bring a habeas corpus petition only if they have exhausted the remedies available in state court....' [Fay v. Noia, 372 U.S.] at 1197 (quoting 28 U.S.C. S 2254(b)). Its purpose is to 'allow[] the state court system to decide the merits of the claim first.' Id. Therefore, the exhaustion doctrine determines not whether, but when, a federal court will consider a habeas corpus petition."). Hence, the court must inquire whether Petitioner has any available state procedures by which he could raise the federal claims which were raised in his federal habeas corpus petition. Moreover, it is Petitioner's burden to prove that he has met the exhaustion requirement, i.e., to prove that there are no procedures available to him in the state by which he may raise the claims that he has raised in his federal habeas petition. Toulson v. Beyer, 987 F.2d 984, 987 (3d Cir. 1993).

Here, it appears that Petitioner both had at the time of filing this petition, and, even now has, a state court remedy by which to challenge the alleged impropriety of the Board's detainer. See, e.g., Kester v. Board of Probation and Parole, 609 A.2d 622 (Pa. Cmwlth. 1992)(the Commonwealth Court explained that there are two possible avenues of available state court means of challenging a detainer filed by the Board, namely, a mandamus petition in the Commonwealth Court's original jurisdiction or a state writ of habeas corpus filed in a Court of Common Pleas, and the Commonwealth Court further explained that it depended on the

allegations made as to which route was proper).[11]  At the very least, Petitioner has not established that there are no available state law means by which to challenge the Board's detainer.

Petitioner does make an argument regarding exhaustion.  He claims that because he was moved around so much and because his legal materials were lost to him, exhaustion should be excused.

As to the first argument, that he was moved around so much that exhaustion should be excused, the court notes that Petitioner does not claim that he was moved around so much **after** January 31, 2007, that exhaustion should be excused, and this is the relevant time frame to judge whether exhaustion should be excused as to this particular claim because it was not until Petitioner started to serve his federal sentence that the Board could have lodged a detainer with the federal authorities which would then have had negative consequences on the federal sentence. As to his alleged lack of legal materials, Petitioner may at the very least initiate proceedings without those materials in the appropriate state court, and presumably any legal records that he is lacking could be produced to him in the course of those proceedings.  Should that not be the case, Petitioner **may** yet be able to return to federal court, only after exhausting those state court remedies, (assuming that he has also satisfied the other conditions in AEDPA),  to seek to challenge the detainer in federal court if the state court remedies turn out not to afford him relief,

---

[11]  Given the reality of the AEDPA statute of limitations, Petitioner may want to attempt simultaneous filings in both the Commonwealth Court seeking to challenge his detainer via a petition for review in the nature of a mandamus, and via the filing of a state writ of habeas corpus in some Court of Common Pleas so that if one should be dismissed as improperly filed, no time will have been wasted.  In the alternative, Petitioner may file in only one State Court, either the Commonwealth Court or a Common Pleas Court and if that court determines the filing was wrongly filed in that court as lacking in jurisdiction, Petitioner could request that court to transfer it to the correct court pursuant to 42 Pa.C.S.A. § 5103 and/or to Pa.R.Civ.P. No. 213.

and then in those federal proceedings, such records, as may be relevant, would, no doubt, be produced to him and to the Court.

Lastly, even if the State Courts do not afford Petitioner relief, it would appear that he may yet challenge the validity of the detainer by filing a habeas petition against his federal custodian, whoever that may be at the time, seeking to avoid the detainer's detrimental effects on his federal sentence. U. S. ex rel. Jennings v. State of Pa., 429 F.2d 522, 523 n.4 (3d Cir. 1970)(in a case where the appellant was in a New Jersey prison serving a New Jersey sentence and Pennsylvania had lodged a detainer against the appellant which had adverse consequences for service of the New Jersey sentence, the Court declared that "Appellant should also be given an opportunity to amend his petition, if he desires, to attack the constitutionality of any consequences which New Jersey imposes solely because of the existence of the detainer. *See Nelson v. George*, 399 U.S. 224 (1970). Of course, if he asserts such an additional claim, that matter must be held in abeyance pending exhaustion of his rights in the New Jersey courts.").

In any event, if Petitioner wishes to challenge the detainer by lodging a federal habeas petition, Petitioner should move expeditiously with respect to challenge to the detainer in light of the AEDPA one year statute of limitations applicable to this claim. Evans v. Holden, 474 F. Supp.2d 587, 590 (D. Del. 2007)(lodging of parole detainer begins the one year limitations period for purposes of § 2254 challenge to parole board's actions).[12] If he seeks to lodge a Section 2254 habeas petition against the Board, given that Petitioner is no longer physically present in the Commonwealth of Pennsylvania, it is not clear where the venue for a Section 2254

---

[12]  To the extent that the Respondents contend that AEDPA's statute of limitations presently bars Petitioner's complaint about the Board's lodging of the detainer with the federal authorities, see, Dkt. [53] at 13 ("Seymour's claims are all untimely") the court is not persuaded as the instant habeas petition was filed even before AEDPA's statute of limitations began running on this claim.

petition lodged against the Board that challenged the detainer would properly be laid nor which of the three Federal District Courts in Pennsylvania would properly have jurisdiction.[13]

To summarize, the court recommends dismissal of the first claim because it is moot, and the second claim should be dismissed  because the second claim is not ripe, and finally, the third claim should be dismissed as unexhausted.

### *Certificate of Appealability*

A certificate of appealability (COA) should be issued only when a petitioner has made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2254(c)(2).  There is some difficulty with applying this provision when the District Court decides the case on procedural grounds.  See, e.g., Slack v. McDaniel, 529 U.S. 473 (2000); Walker v. Government of The Virgin Islands, 230 F.3d 82, 89-90 (3d Cir. 2000).  In Slack v. McDaniel, the Supreme Court held that "when the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Slack v. McDaniel, 529 U.S. at 478.  Hence, the analysis as to whether a certificate of appealability should issue to review a

---

[13]  Petitioner has not requested, nor carried his burden to show entitlement, to have the present habeas petition stayed and abeyed pending exhaustion of the third claim in the state courts.  Rhines v. Weber, 544 U.S. 269 (2005); Pace v. DiGuglielmo, 544 U.S. 408, 416-17 (2005) ("'[I]f the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory tactics,' then the district court likely 'should stay, rather than dismiss, the mixed petition'")(quoting the syllabus in Rhines, 544 U.S. at 269).  As noted in the body of the Report, with respect to this third claim, Petitioner made no contentions that he was moved around so much **after** his transfer to federal custody, i.e., after January 31, 2007, when the Board subsequently lodged its detainer with the federal authorities, that he has good cause for not exhausting this third claim.

procedural question, has "two components, one directed at the underlying constitutional claims and one directed at the district court's procedural holding." Id. at 484-85. The test is conjunctive and both prongs must be met. See Walker v. Government of the Virgin Islands, 230 F.3d at 90.

Applying this standard to the instant case, the court concludes that jurists of reason would not find it debatable whether dismissal of the petition for mootness, ripeness and/or exhaustion concerns was correct. In light of this conclusion, the court need not address the second prong of whether Petitioner showed that jurists of reason would find it debatable if the petition states a valid claim of the denial of a constitutional right. Accordingly, a certificate of appealability should be denied.

CONCLUSION

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have seven (7) days from the date of service of the objections to respond thereto. Failure to timely file objections may constitute a waiver of any appellate rights.

Respectfully submitted,

/s/ Amy Reynolds Hay
United States Magistrate Judge


Dated: 5 November, 2007

cc:     The Honorable Gary L. Lancaster
        United States District Judge


        William Seymour Jones
        535-78-066

Federal Correctional Institute
PO Box 6000
Glenville, WV 26357

All Counsel of Record via CM-ECF